## 38277. MILLER v. THE STATE.

JORDAN, Chief Justice.

The appellant, Otis Lee Miller, was convicted for the murder of Atlanta Police Officer James Richardson, sentenced to life imprisonment, and he appeals.

The following testimony and evidence was adduced at trial.

On the night of July 19, 1980, Miller and his companion-co-defendant, Adams, were driving around Atlanta in a car they had stolen earlier that evening from a couple they had abducted and robbed. The couple had escaped but not before being fired upon.

Officer Richardson, an undercover policeman driving an unmarked car, stopped at a Jim Wallace service station at approximately 4:00 a.m. to use the telephone. At about the same time, Miller and Adams pulled into the service station. The female attendant testified that Miller and Adams cursed her for not allowing them to purchase gas because they did not have the exact amount in cash. Miller and Adams then sped out of the service station and were followed by Officer Richardson who stopped them just up the street. Officer Richardson directed Adams, who was driving, to pull into a nearby vacant service station lot. Richardson parked his car behind Miller and Adams' vehicle.

A restaurant and tavern was located across the street from the vacant service station lot. Eight witnesses were standing in the area of the tavern and restaurant and the Jim Wallace service station. These witnesses testified that they saw or heard the shooting. Two witnesses testified Adams got out of the driver's side and talked with Officer Richardson, who then walked to the back of the stolen car to check the tag. At this point, these witnesses testified that Miller got out the passenger side and opened fire on Richardson. Another eyewitness testified that the driver of the car opened fire on Richardson. However, these three eyewitnesses all testified that the man who did the shooting ran down the street back towards the Jim Wallace service station, and two witnesses at the station stated they saw Miller carrying a gun and running away from the shooting. Finally, a defense witness testified that the driver shot Officer Richardson and then jumped in the car and drove off.

Several witnesses testified that Miller was the passenger and Adams the driver, and Miller's fingerprints were found on the passenger side of the car.

Miller made several statements to the police, and he also testified at trial. In his first statements, he contended the following events took place: Adams came to his house and asked him if he

wanted to go for a ride; he accepted, and while riding around Officer Richardson stopped them; Adams got out of the car and spoke with Richardson; suddenly Miller heard gunfire, and he panicked and ran.

The next day Miller recounted a different set of events: that Adams asked him if he wanted to rob someone and he agreed; they went to a club where they proceeded to rob and abduct a couple; they were riding around town with the couple when the couple jumped out of the car and ran; Adams fired at the couple; later that night they were riding in the stolen car when Richardson stopped them; Adams got out and was talking to Richardson; Miller got out of the car and walked towards the back of the car with his gun; Adams fired at Richardson; Miller fired once before his gun locked up. Miller ran and Adams drove from the scene.

Miller and Adams had used two .22 caliber pistols, one larger than the other. The State's expert testified that the bullets recovered from Richardson's body were fired from the larger gun. He also testified that the firing pin on the smaller gun protruded, which would allow it to fire only once before it jammed. There was evidence that Adams and Miller had constantly switched guns during the evening. However, two witnesses at the Jim Wallace station testified that when Miller ran by after the shooting they saw him carrying the larger of the two guns.

At the trial, Miller gave an account similar to that in his second statement. He stated that Adams asked him if he wanted to make some money by robbing someone and that he answered affirmatively. Next, they went to the club where they abducted and robbed the couple. He stated that Adams shot at the couple, and that later that evening Richardson stopped them. He stated that both he and Adams got out but that the officer ordered him to get back in the car. He said that he did so and that the small .22 caliber pistol was on the front seat. He testified that he next heard shots and that he picked up the gun and ran. He denied shooting Richardson and contended that Adams had the larger gun during the shooting. He also testified that in his second statement he only said he shot at Richardson because the police had beaten him.

1. Miller first contends the trial court erred in denying him a new trial. He contends that a new trial is justified on the grounds that the verdict is contrary to the evidence, to the law, and to principles of justice and equity. Code Ann. § 70-202.

We affirm. The evidence in this case, though not without conflict, is sufficient to sustain the verdict of the jury. Two eyewitnesses testified that Miller shot Officer Richardson and ran from the scene, and two other witnesses testified that they saw Miller

running from the scene carrying the murder weapon. Although a defense witness testified that the driver shot Officer Richardson, any questions of the credibility of witnesses and the weight to be given their testimony is entirely within the province of the jury. *Young v. State,* 232 Ga. 176 (205 SE2d 307) (1974); *Redd v. State,* 154 Ga. App. 373 (1) (268 SE2d 423) (1980). We conclude that a rational trier of fact could reasonably have found from the evidence proof of the guilt of Miller beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Redd v. State,* supra, p. 373.

2. The appellant next contends that the trial court erred in refusing to give his request to charge that the "mere association" of a defendant with another is an insufficient basis upon which to find the defendant guilty.

Though the trial court did not grant Miller's request, it did charge the jury that "the mere presence of the defendant at the scene of the crime at the time of its perpetration could not be sufficient to convict the defendant of any crime."

We find no error. The charges given by the court were full and fair, and the "mere presence" charge covers in substance the same principles involved in the requested "mere association" charge. *Nelson v. State,* 247 Ga. 172 (12) (274 SE2d 317) (1981); *Mason v. State,* 236 Ga. 46 (5) (222 SE2d 339) (1976).

3. In his last enumeration of error, Miller contends that the trial court erred in refusing to give his requested identification charge.

We find no error. Though the trial court did not adopt the exact language of Miller's requested charge, it did use a charge that fully covered the identification issue and that instructed the jury as to the state's burden of proving identity beyond a reasonable doubt. See, *Nelson v. State,* supra, and *Mason v. State,* supra.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 23, 1982.

*Charles R. Floyd, Jr.,* for appellant.
*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Assistant District Attorney, Michael J. Bowers, Attorney General, Charles E. Brown, Staff Assistant Attorney General,* for appellee.