45923. LEMLEY v. THE STATE.
(372 SE2d 421)

CLARKE, Presiding Justice.

Lemley appeals from his second conviction for the murder of a deputy sheriff who came to his home with a warrant for his arrest.[1] His first conviction was affirmed on appeal, *Lemley v. State,* 245 Ga. 350 (264 SE2d 881) (1980). However, a writ of habeas corpus was granted because of the habeas judge's finding that the sheriff had packed the courtroom with law enforcement officials. The district attorney's attempt to intervene in this habeas action was denied in *Wiggins v. Lemley,* 256 Ga. 152 (345 SE2d 584) (1986). The court held that only the attorney general may appeal from a grant of habeas corpus. This court affirmed and a new trial resulted in the conviction appealed here.

Lemley's defense to the charge of murder was that the deputy fired first as he came to the house to execute a warrant for the arrest of Lemley on a charge of smuggling marijuana cigarettes to an inmate in the Houston County jail. Two neighbors testified that appellant fired first. There was testimony that approximately two weeks before the shooting Lemley remarked, "The next time one of the God damn pigs comes down here, I'm going to kill him." There was testimony that after he was arrested Lemley bragged about killing a cop and making him beg.

---

[1] In his second trial, appellant was convicted April 9, 1987, and sentenced April 24, 1987. A motion for new trial was filed May 19, 1987, amended April 11, 1988, and denied May 3, 1988. The notice of appeal was filed May 31, 1988. The transcript was certified by the court reporter August 24, 1987. The case was docketed in this court June 23, 1988, and submitted for opinion August 5, 1988.

1. There was sufficient evidence of Lemley's guilt to satisfy the requirements of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that the court erred in admitting the autopsy photographs in evidence. The photographs do not offend the guidelines set out in *Brown v. State,* 250 Ga. 862 (302 SE2d 347) (1983). The pictures show the body as it existed after the shooting, unaltered by the autopsy examination. There was no error in admitting these photographs. *Sanders v. State,* 257 Ga. 239 (357 SE2d 66) (1987).

3. In his next enumeration of error appellant claims that the court erred in denying his motion to suppress his statement that "The next time one of the God damn pigs comes down here, I'm going to kill him." The motion to suppress also included his response to a question as to how appellant's having large boulders in his yard would further this plan: "Well, they'll have to park the car on the side of the road and walk down through my yard, and that will give me time to get ready in the dark so I can take care of it." The motion to suppress was based on the appellant's contention that the statement was made when he was illegally in custody. At the time of the statement the appellant was in the custody on a charge of carrying a concealed weapon without a license. The arrest followed an officer's observation of a pistol in appellant's pocket and discovery of another pistol in his underwear after a pat down. Appellant admitted he had no license. He made the statement to the arresting officer when he took appellant to his home to look for more weapons. Appellant had received *Miranda* warnings before making the statement. The denial of the motion to suppress was not error.

4. Appellant contends that the court erred in failing to grant his motion for the change of venue. Appellant insists that the volume of publicity through the first trial, the habeas, and prior to the second trial was such that the community was prejudiced. He relies heavily upon a survey taken by a retired University of Alabama professor to support his contentions. In this survey of 300 households in Houston County, the surveyor found that only 1% remembered nothing of the shooting which had occurred nine years previously. He further found that of those who remembered a great deal about the incident, 92% believed Lemley to be guilty. Of those who remembered only a little, 54% believed him to be guilty.

Besides the publicity which occurred between the time of the murder on September 1, 1978, and the trial in March of 1979, there was publicity surrounding the habeas hearing, the decision to grant habeas corpus, and the decision of the attorney general not to appeal. There was further publicity at the time of the retrial of the case. Besides factual news stories there were editorials criticizing the appel-

late courts and the attorney general. In these editorials the details of the case were of course discussed.

The inquiry into a request for a change of venue is two pronged. First, the court must consider whether the atmosphere in the community is so inherently prejudicial due to pretrial publicity that the defendant cannot receive a fair trial in the community. Secondly, the court must consider whether the defendant cannot receive a fair trial due to the prejudice of individual jurors. *Patton v. Yount*, 467 U. S. 1025 (104 SC 2885, 81 LE2d 847) (1984); *Chancey v. State*, 256 Ga. 415 (349 SE2d 717) (1986).

Here the court found at the motion hearing that there was not sufficient pretrial publicity to cause an inherently prejudicial situation. We find no error. In *Rideau v. Louisiana*, 373 U. S. 723 (83 SC 1417, 10 LE2d 663) (1963), the Court found that where the defendant's uncounselled and detailed confession was shown on television three times in the community from which the jurors were drawn, the atmosphere in the community was so prejudicial that there was no need to establish bias by examination of the responses of jurors on voir dire. Courts have interpreted the holding of *Rideau* to require that in order to establish bias without consideration of the voir dire petitioner adduce "evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community . . . ." *Mayola v. State of Alabama*, 623 F2d 992, 997 (5th Cir. 1980). Situations which are made inherently prejudicial by pretrial publicity are extremely rare. *Nebraska Press Assn. v. Stuart*, 427 U. S. 539 (96 SC 2791, 49 LE2d 683) (1976); *Mayola v. State of Alabama*, supra. We have examined the articles concerning this appellant and find that they do not reach the level of inflammatory material which would render the atmosphere of the community inherently prejudicial. The high volume of information does not necessarily cause the information to be inflammatory. The constitution mandates freedom of expression, and the freedom to listen naturally follows. The result may be an informed public or a misinformed public. Being informed or even misinformed is not always the same as being inflamed or prejudiced.

The second prong of a change of venue inquiry, once it has been established that the atmosphere in the community is not inherently prejudicial, is to consider evidence of actual prejudice of jurors on voir dire. *Chancey v. State*, supra. In this case sixty-two jurors were individually voir dired, and nine were dismissed for cause on the basis of a fixed opinion as to guilt. Of these nine, three had formed an opinion because of knowledge gained during the first trial, and one had formed an opinion through conversations with the victim's father. An excusal rate of nine out of sixty-two, 14.516%, does not indicate such

actual prejudice of potential jurors as to render a fair trial in the community impossible. *See Devier v. State*, 253 Ga. 604 (323 SE2d 150) (1984).

*Judgment affirmed. All the Justices concur. Hunt, J., disqualified.*

DECIDED OCTOBER 5, 1988.

*Harry J. Fox, Jr.,* for appellant.

*James L. Wiggins, District Attorney, James E. Turk, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.