### S01A0780. PITTMAN v. THE STATE.
(553 SE2d 616)

BENHAM, Justice.

Appellant Charles Clyde Pittman, Jr., was convicted of malice murder, possession of a firearm during the commission of a crime and possession of a firearm by a first offender probationer.[1] The victim was appellant's aunt, Linda Hunt.

Ms. Hunt's body was found in her mobile home by relatives and a friend after she did not report to work. She had died as a result of a single gunshot wound that entered behind her right ear and exited near her left jaw. Expert testimony established that the shot was fired from a distance of less than one inch. Appellant told investigating officers he had shot the victim while in a cocaine-induced state and had asked his girlfriend to dispose of the murder weapon. The girlfriend led investigators to the gun that appellant had given her, and experts identified it as the weapon that fired the fatal shot. Appellant also stated he had burned the clothing he was wearing when the victim was killed, and investigators found the ashes of a fire at the site appellant described. There was evidence at the murder scene that an open can of paint had been knocked over after the victim was killed and before her body was found. Fresh paint removed from the upholstery of the driver's seat of the car appellant used was determined by an expert to be like the spilled paint "with respect to color, texture, microchemical reactivity, detailed binder characteristics and pigment characteristics." The State also introduced evidence that, at the time of the murder, appellant was on probation. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes

---

[1] The crime occurred in the early morning hours of October 24, 1994, and appellant was arrested on a probation violation on October 29. The Pickens County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder, and the firearm possession charges on December 14, 1994. Appellant's trial commenced on March 25, 1996, and concluded on March 30 with the jury's return of its guilty verdict and the trial court's imposition of a sentence of life imprisonment for malice murder and two consecutive five-year terms of imprisonment for the firearms convictions. Appellant's motion for new trial, filed April 26, 1996, and amended September 26, 2000, was denied October 6, 2000. A notice of appeal was timely filed on November 3, 2000, and amended on November 6. The case was docketed in this Court on February 21, 2001, and submitted for decision on the briefs.

charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Appellant contends he was denied his right to a thorough and sifting cross-examination of several experts from the Georgia Bureau of Investigation's Crime Lab. Each expert had signed the GBI's "official report" which contained, in addition to the results of tests each expert had performed in conjunction with the murder investigation, an unattributed page listing suspects other than appellant. After questioning each expert about his or her test results, appellant's trial counsel attempted to ask the witness about the "suspects" portion of the GBI report. Each time, the trial court sustained the State's objection to trial counsel's inquiry.

Although a defendant is entitled to a thorough and sifting cross-examination as to all relevant issues, the trial court is invested with broad discretion to determine the scope of relevant cross-examination. *Kolokouris v. State*, 271 Ga. 597 (4) (523 SE2d 311) (1999). The conclusions, opinions, and impressions of third parties not before the court are not admissible under the business records exception to the rule against the admission of hearsay. *Malcolm v. State*, 263 Ga. 369 (3) (434 SE2d 479) (1993). The trial court did not abuse its discretion when it did not permit cross-examination concerning inadmissible hearsay. *Stone v. State*, 250 Ga. 718, 719 (300 SE2d 500) (1983).

2. Appellant next complains the trial court committed reversible error when it failed to grant his motion for mistrial made after a witness purportedly gave an opinion as to the ultimate issue to be decided by the jury, the guilt or innocence of appellant. The witness, a GBI investigator, testified that a bandana discovered at the scene of the crime contained a blood droplet which led the witness to believe the bandana was there before the victim was killed. The witness opined that if the bandana did not belong to the victim and if someone wore it to the scene and left it there, the latter "most likely would have committed the crime based on the evidence from the couch and the blood trails." When the district attorney asked, "So when [appellant] admitted ownership of the bandana –," the witness gave an affirmative response. At this point, the trial court interrupted, inquiring about the relevancy of the question and suggesting that any attempt to get the witness's opinion "goes close to what the jury is to decide." The trial court denied defense counsel's motion for mistrial that was grounded on the belief that the witness had testified that appellant, as owner of the bandana, was the killer. Following a break taken shortly after this exchange, the district attorney informed the court that a courtroom spectator had approached him and told him that the victim had told the spectator about a month before her death that appellant had given her the bandana. Seeing

this as exculpatory evidence, the district attorney made the trial court and defense counsel aware of the information and interrupted the testimony of the GBI investigator to present the spectator's testimony to the jury.

Whether to grant a motion for mistrial lies within the sound discretion of the trial court. *Isaac v. State*, 269 Ga. 875 (3) (505 SE2d 480) (1998). "A witness generally is not permitted to express his or her opinion regarding an ultimate issue in the case because to do so would invade the fact-finding province of the jury. . . ." *Medlock v. State*, 263 Ga. 246, 248 (3) (430 SE2d 754) (1993). We believe the trial court stopped the line of questioning before the investigator actually stated his opinion concerning appellant's culpability for the death of the victim, and the district attorney's immediate presentation of evidence disproving the factual basis for the investigator's disputed testimony supports the trial court's exercise of its discretion to deny the motion for mistrial.

3. Appellant also sees reversible error in the trial court's refusal, following both sides' invocation of the rule of sequestration, to permit appellant's expert to remain in the courtroom at counsel table during the State's presentation of its case to aid defense counsel in the cross-examination of the State's experts, and then to testify on behalf of the defendant. Although defense counsel stated his belief that his witness could remain in the courtroom during the State's presentation of its case because OCGA § 24-9-61, the statute embodying the rule, only required the State's witnesses to be out of the courtroom during the presentation of the State's case, the trial court denied the motion and noted that attorneys "may proceed at their peril about bringing a witness in the courtroom [after the court has directed all witnesses to remain outside the courtroom] . . . [and that] it would certainly be contemptuous of that witness as well as possibly of that attorney." Defense counsel then elected to have the expert sit at counsel table with him during the presentation of the State's case. The trial court, noting the expert's presence, opined that the ends of justice would not be met if the expert witness were permitted to testify after being in the courtroom. Defense counsel did not call the expert as a witness.

OCGA § 24-9-61 states that, with the exception of the victim of the offense being tried, "in all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude a witness." The statute gives each party the right to have the other party's witnesses examined out of the hearing of each other. *Rooks v. State*, 65 Ga. 330, 331 (1880). See also *Hawkins v. State*, 260 Ga. 138 (8) (b) (390 SE2d 836) (1990); *Stevens v. State*, 247 Ga. 698

(6) (278 SE2d 398) (1981). However, the parties' "absolute right" to sequestration of the other side's witnesses is subject to the trial court's sound discretion in permitting one or more witnesses to remain in the courtroom to assist the opposite party in the presentation of the case. *Spurlin v. State*, 222 Ga. 179 (2) (149 SE2d 315) (1966); *Carson v. State*, 80 Ga. 170 (1) (5 SE 295) (1887) (when the rule was invoked, "it [was] in a great degree discretionary with the presiding judge whether he would allow some of them to remain or not."). Where, as here, the trial court declines to grant an exception to the defense's expert witness and counsel then withdraws the expert as a witness in order to use his services in court during the trial, there is no such abuse of discretion as will justify the grant of a new trial when the record does not contain a proffer as to what the expert could or would have testified to as a witness. *Hinkle v. State*, 94 Ga. 595 (3) (21 SE 595) (1894).

4. Several witnesses were permitted to testify about statements made to them by appellant's girlfriend, who, outside the presence of the jury, invoked her Fifth Amendment privilege not to incriminate herself. The trial court permitted the witnesses to testify to the out-of-court statements because the State alleged the declarant had been involved in a conspiracy with appellant to conceal appellant's role in the victim's death. Appellant contends his right of confrontation was violated when the alleged co-conspirator's statements were admitted before evidence of a conspiracy was presented. However,

> [w]hile it may generally be the better practice to require a prima facie case of conspiracy first to be made before admitting evidence of the acts and declarations of one of the alleged co-conspirators, there is no inflexible rule to that effect. The trial court has some discretion as to the order in which testimony may be introduced; and if a prima facie case of conspiracy is shown from the whole evidence, the admitting of such testimony is not error. [Cit.]

*Isaac v. State*, supra, 269 Ga. 875, 878 (6). Since there was evidence that appellant and his girlfriend acted in concert to conceal his participation in the victim's death by hiding the murder weapon and lying about his health to provide him with an alibi, the trial court did not err in admitting the testimony. Because the conspiracy involved the concealment phase of the crime, we must apply the reliability factors[2] set forth by the U. S. Supreme Court in its plurality opinion in

---

[2] (1) the absence of an express assertion about a past fact; (2) the declarant had personal knowledge of the identity and roles of the participants in the crime and cross-examination of the declarant would not have shown that the declarant was

*Dutton v. Evans*, 400 U. S. 74, 88-89 (91 SC 210, 27 LE2d 213) (1970), to determine whether appellant's right to confront the non-testifying declarant was abridged. *Copeland v. State*, 266 Ga. 664 (2) (b) (469 SE2d 672) (1996). We conclude it was not.

5. Lastly, appellant contends trial counsel rendered ineffective assistance of counsel by failing to pursue the motion for a change of venue counsel had filed. At the hearing on the amended motion for new trial, appellate counsel presented six local newspaper articles that were published from October 27-December 22, 1994, and on June 22 and June 29, 1995,[3] and noted that only a handful of the venire members did not know about the case prior to the trial. Appellant's trial counsel testified that the venue motion was not pursued because counsel believed the small number of published news stories would not justify a change of venue, and he viewed the large number of Pittman family friends in Pickens County as favorable to his client in the jury selection process.

The burden was on appellant to establish that he received ineffective assistance of counsel (*Van Alstine v. State*, 263 Ga. 1 (426 SE2d 360) (1993)), and he was required to show that counsel performed deficiently and that, but for the deficient performance, there was a reasonable likelihood that the outcome of the trial would have been different. *Turner v. State*, 273 Ga. 340 (2) (541 SE2d 641) (2001). Appellant had to overcome the strong presumptions that trial counsel's performance fell within the wide range of reasonable professional conduct and that the decision not to pursue the motion was made in the exercise of reasonable professional judgment. *Berry v. State*, 267 Ga. 476 (4) (480 SE2d 32) (1997). Inasmuch as the newspaper articles were factually correct, non-inflammatory, and did not reflect an atmosphere of hostility, appellant did not establish that the setting of the trial was inherently prejudicial. *Dixson v. State*, 269 Ga. 898 (2) (506 SE2d 128) (1998). Further, inasmuch as there is no evidence that any venire member was dismissed for cause due to a fixed opinion as to appellant's guilt, there is no evidence that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. See *Tolver v. State*, 269 Ga. 530 (4) (500 SE2d 563) (1998); *Lemley v. State*, 258 Ga. 554 (4) (372 SE2d 421) (1988).

---

unlikely to know whether the defendant was involved in the crime; (3) the possibility that the declarant's statement was founded on faulty recollection was remote; and (4) the circumstances under which the declarant gave the statement suggest that the declarant did not misrepresent the defendant's involvement in the crime. *Copeland v. State*, 266 Ga. 664, 665 (2) (b) (469 SE2d 672) (1996).

[3] The earliest article concerned the victim's murder, the next two reported the arrests of appellant and his girlfriend, and the December 22 story reported the grand jury's indictment of appellant. The June 1995 articles recounted appellant's escape from the county jail and the fact that he turned himself in four days later.

See also *Happoldt v. State*, 267 Ga. 126 (2) (475 SE2d 627) (1996). Appellant did not establish ineffective assistance of counsel, and the trial court did not err in so ruling.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 2001.

*Abernathy & Ballinger, Richard A. Jones*, for appellant.

*Roger Queen, District Attorney, Thurbert E. Baker, Attorney General, Ruth M. Bebko, Assistant Attorney General*, for appellee.