S05A0597. HARRIS v. THE STATE.
(612 SE2d 789)

HINES, Justice.

Alvin Harris appeals his convictions for felony murder, aggravated assault, and possession of a firearm during the commission of a felony in connection with the fatal shooting of Rodrico Callaway and the aggravated assault of Marcus Callaway. Harris challenges the admission of certain testimony, the sufficiency of the evidence, and the effectiveness of his trial counsel. For the reasons which follow, we find the challenges to be without merit and we affirm.[1]

The evidence, construed in favor of the verdicts, showed that on October 3, 1998, Rodrico Callaway, and his brother, Marcus, had been to a party and were on their way to another one when they became involved in an altercation at the residence of Darrell Tucker. There, Marcus Callaway got in a physical fight with Dexter Green and Calvin Harris, the brother of Alvin Harris ("Harris"). During the altercation, Green pointed a pistol at the Callaways, but was unsuccessful in his attempt to fire it. The Callaways were unarmed.

Yolanda King told her cousin, Melissa King, about the fight; Melissa King was Harris's girlfriend. Melissa King woke up Harris and they went to look for Calvin. After finding Calvin, Calvin told

---

[1] The crimes occurred on October 3, 1998. On January 12, 1999, a Bibb County grand jury indicted Alvin Harris for: Count 1 – the murder (with malice aforethought and in the commission of aggravated assault) of Rodrico Callaway; Count 2 – the aggravated assault of Marcus Callaway; Count 3 – possession of a firearm during the commission of murder as alleged in Count 1; Count 4 – possession of a firearm during the commission of aggravated assault as alleged in Count 2; and Count 5 – possession of a firearm by a convicted felon. Harris entered a guilty plea to Count 5. He was tried before a jury on the remaining counts June 21-23, 1999, and was found guilty of felony murder, aggravated assault, and the two firearm possession charges. By sentences dated July 26, 1999, and filed August 5, 1999, Harris was ordered to serve life in prison on Count 1, a consecutive ten years in prison on Count 2, and five years each on Counts 3 and 4 to be served concurrently with each other but consecutively to the sentence in Count 1. A motion for new trial was filed on August 6, 1999, amended on May 17, 2004, and denied on June 4, 2004. A notice of appeal was filed on June 28, 2004, and the appeal was docketed in this Court on December 10, 2004. The case was submitted for decision on January 31, 2005.

Harris that "they had tried to jump on me, man." Harris obtained a pistol, stating that if someone jumped on his brother, "somebody's going down." Melissa King asked Harris to put the pistol away.

The Callaways arrived at a "bootlegger's" house and found Harris and Calvin waiting for them. Fighting began, and Marcus Callaway heard two shots fired. Rodrico Callaway was killed by a gunshot wound to the back. Marcus Callaway was wounded by the second shot which entered his back, injuring his spine. After hearing the first shot, Calvin turned around and saw his brother, Harris, holding the pistol as Rodrico Callaway fell down. In his statement to the police, Harris admitted that he had done the shooting and apologized, saying that he was "scared."

1. Harris contends that the trial court erred in overruling the defense objection to the direct testimony of Darrell Tucker about whether, based upon his own observation, Tucker believed Harris was armed the night of the shooting.[2] Citing *Pittman v. State*, 274 Ga. 260, 262 (2) (553 SE2d 616) (2001), Harris argues that such testimony was improper speculation as to his guilt, and as such, requires reversal of his convictions. But the argument is unavailing.

In *Pittman v. State*, supra, the witness in question, an investigator, testified about a bloody item discovered at the crime scene and opined that if someone other than the victim wore the item to the crime scene then that individual most likely committed the crime. In this case, Tucker was not asked to, nor did he, express an opinion about whether Harris shot either or both of the Callaway brothers or whether Harris possessed a firearm during the commission of any felony. Instead, Tucker merely testified about what he observed regarding Harris's appearance and behavior and the assumptions he

---

[2] The colloquy in question was the following:
STATE: When you saw Alvin Harris on Houston Avenue, what was he wearing?
TUCKER: He had on some – I think some brown-looking pants and a teeshirt.
STATE: Okay. Did he have his teeshirt on or off when you saw him?
TUCKER: He had it off at first. Then he put in on.
STATE: All right. He had it off and then he put in on. All right. Did you see Alvin Harris – you're going to have to speak up, okay? . . . All right. He had his teeshirt off?
TUCKER: Yes, he did.
STATE: All right. Did you see him make any motions with his hands?
TUCKER: Yes.
STATE: Okay. And could you describe for this jury what you saw him do?
TUCKER: Just put his hands in the front and then put on his shirt.
STATE: All right. He put his hands in the front. Okay. And then he put on his shirt.
TUCKER: (Nodding head affirmatively.)
STATE: All right. Based on the movements that you saw him make, did you make an assumption that he was armed? . . .
DEFENSE OBJECTION AND RULING
STATE: Did you make an assumption that he was armed?
TUCKER: I figured he might be.

made based upon such observations. A lay witness may relate his or her opinion as to the existence of any fact so long as the opinion is based upon the person's own experiences and observations, and so long as the matter referred to is within the scope of the average juror's knowledge. *Weston v. State*, 276 Ga. 680, 682 (3) (580 SE2d 204) (2003). What is more, even if it had been error to allow the testimony, it would not provide a basis for reversal inasmuch as Harris himself admitted the fact of the possession of a firearm. See *Johnson v. State*, 261 Ga. 419, 420 (3) (405 SE2d 686) (1991).

2. There is likewise no merit to Harris's contention that the evidence was insufficient for a jury to find beyond a reasonable doubt that he did not act with justification and in self-defense. Witness credibility is a matter to be determined by the jury, as is the question of justification; therefore, the jury was free to accept the evidence that the shootings were not done in self-defense or in defense of another person, including Harris's own inculpatory statements, and to reject any evidence offered by Harris in support of a justification defense. *Slaughter v. State*, 278 Ga. 896 (608 SE2d 227) (2005). The evidence was sufficient to enable a rational trier of fact to find Harris guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Harris contends that his trial counsel failed to provide effective assistance in several respects. However, in order to prevail on his claim of ineffective assistance of counsel, Harris must show that his attorney's performance was deficient and that the deficiency so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of his trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). He must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. *Sims v. State*, 278 Ga. 587, 589 (3) (604 SE2d 799) (2004). The trial court did not err in concluding that Harris failed to meet his burden of demonstrating the ineffective assistance of his trial counsel on any of the bases asserted.

(a) Harris first asserts that his trial counsel was ineffective because, during the time of his representation of Harris, counsel was addicted to cocaine. But Harris has failed to provide any evidence whatsoever that his attorney was under the influence of drugs during his representation or that counsel's physical and/or mental state resulted in any deficiency of professional performance or detriment to Harris. Harris further makes the unsupported claim that his trial counsel was eventually disbarred; however, the fact of disbarment subsequent to the representation, in and of itself, does not provide a basis for presuming deficient performance. *Shiver v. State*, 276 Ga. 624, 626 (4) (581 SE2d 254) (2003).

(b) Harris next claims that trial counsel was ineffective because he failed to properly investigate the incident, as shown by his failure to timely subpoena witnesses for the defense. He further complains that counsel did not learn of important evidence until immediately before the trial; that he met with Harris only on one brief occasion prior to the trial; that his mother attempted to reach trial counsel on several occasions but, except for a very few times, was unable to get through; and that counsel failed to impeach Marcus Callaway with his criminal record.

First, Harris does not specify which witnesses counsel failed to subpoena; nor does he even suggest how such witnesses would have benefitted his defense. In fact, the record shows that trial counsel called six witnesses to testify for the defense. Second, Harris claims that trial counsel was late in learning of important evidence, yet he fails to state what that evidence is or its relevance to his case. Third, the complaint of insufficient meetings with trial counsel "is not dispositive, as there exists no magic amount of time which counsel must spend in actual conference with his client. [Cit.]" *McCutchen v. State*, 276 Ga. 532, 533 (579 SE2d 732) (2003), quoting *Morgan v. State*, 275 Ga. 222, 228 (10) (564 SE2d 192) (2002). As to Harris's complaint about his mother's difficulty in contacting trial counsel, Harris fails to allege, much less demonstrate, any prejudice. Finally, Harris completely fails to show how the failure to impeach Marcus Callaway with his criminal history would have altered the outcome in light of the State's evidence at trial. See Division 2, supra.

(c) Harris next urges that trial counsel was ineffective because he failed to investigate Harris's mental health history and failed to raise the issue of his mental health at trial. However, Harris does not contend that he was insane at the time of the crimes, incompetent to stand trial, or otherwise was suffering from delusional compulsion. Nor is there any evidence to support the possibility of verdicts of guilty but mentally ill. See *Boswell v. State*, 275 Ga. 689 (572 SE2d 565) (2002).

As to Harris's further complaint that counsel did not present evidence of his mental health in mitigation of punishment, this does not aid him. First, the record of the sentencing hearing shows that there was testimony of Harris being in therapy. Furthermore, Harris can show no harm from the failure to introduce at sentencing more detail about his mental health history. "[F]elony murder carries a mandatory life sentence." *Cochran v. State*, 279 Ga. 51, 52 (609 SE2d 353) (2005). The firearm possession required a consecutive five-year sentence. OCGA § 16-11-106 (b); see *Shirley v. State*, 260 Ga. App. 309, 310 (581 SE2d 320) (2003). As to the aggravated assault, the trial court was lenient in sentencing Harris to half of the time allowed by law. OCGA § 16-5-21 (b).

Harris also asserts that he previously had been shot and that the effect of the shooting on his state of mind would have been important to his claims of justification and self-defense, but the complaint is of no moment. A defendant is not permitted to support a justification defense with an explanation that he or she had been the victim of an earlier attack committed by an unknown person; such evidence is not relevant to the critical question of whether the circumstances surrounding the commission of the crimes on trial would have excited the fears of an objective reasonable person to the point where the defendant's actions were justified. *Lewis v. State*, 270 Ga. 891, 893 (2) (515 SE2d 382) (1999).

(d) Harris maintains that his trial counsel was ineffective because counsel failed to apprise him of a plea offer by the State, and that he would have accepted the plea; he claims that the offer was communicated only to his mother. But the evidence in support of this claim is Harris's own testimony, and the credibility of Harris as a witness at the motion for new trial hearing was a matter for the trial court's discretion. *Curry v. State*, 238 Ga. App. 511, 522 (5) (519 SE2d 269) (1999). This Court will accept the trial court's factual findings and credibility determinations unless clearly erroneous. *Hunt v. State*, 279 Ga. 3, 5 (4) (608 SE2d 616) (2005). Here, there is simply no evidence to conclude that such determinations were in error.

(e) Finally, Harris's assertion that trial counsel was ineffective because he pressured him into waiving his right to testify at trial despite his desire to do so is belied by the record. The trial court painstakingly informed Harris of his right to testify and that it was Harris's decision to make, not his lawyer's. The court even recessed for the day and gave Harris the night to think about his decision not to testify. The next day, Harris again affirmed his intention not to testify. Thus, there is no error in denying the claim of ineffective assistance of counsel on this basis. *Moody v. State*, 277 Ga. 676, 681 (6) (e) (594 SE2d 350) (2004).

*Judgments affirmed. All the Justices concur, except Fletcher, C. J., who concurs in Divisions 2 and 3, and in the judgment.*

DECIDED MAY 9, 2005.

*Renate D. Moody*, for appellant.

*Howard Z. Simms, District Attorney, Elizabeth K. Bobbitt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.