A07A2065. HAFEZ et al. v. THE STATE.
(660 SE2d 787)

ADAMS, Judge.

Mahmoud Mohmed Hafez and his wife Christy Darlene Pressley were indicted for the offenses of false imprisonment (Count 1), first degree cruelty to children (Counts 2 and 4) and second degree cruelty to children (Counts 7 and 8). Hafez was also indicted for two additional counts of first degree cruelty to children (Counts 3 and 5) and battery under the Family Violence Act (Count 6). They were convicted on all counts. They appeal following the denial of their motion for new trial. We affirm.

1. Defendants first contend that the trial court erred by failing to grant their general demurrer to Counts 7 and 8 of the indictment. Citing *Robinson v. State*, 256 Ga. 564 (350 SE2d 464) (1986), they argue that they were tried under an indictment that charged them with a violation of law that had been repealed without a savings clause by the General Assembly prior to their trial. But *Robinson* is not controlling here. As our Supreme Court explained in *Daker v. Williams*, 279 Ga. 782 (621 SE2d 449) (2005):

> In general, "(w)hen a statute making described conduct a crime is repealed prior to final judgment on a conviction, the repeal ends the prosecution if the legislature has not provided otherwise in a saving clause." *Robinson v. State*, 256 Ga. [at 565]. See also *Gonzalez v. Abbott*, 262 Ga. 671 (425 SE2d 272) (1993); *Bassett v. Lemacks*, 258 Ga. 367 (370 SE2d 146) (1988). In other words, if, due to a statutory amendment prior to the entry of a final judgment on a conviction, the actions for which a defendant was indicted no longer constitute a crime, the prior conviction is abated in the absence of a savings clause providing otherwise. On the other hand, a prosecution may continue towards a final disposition where the actions for which the defendant was indicted were not decriminalized by the subsequent statutory amendment. A conviction may stand if it was authorized under both the original definition of the crime and the revised definition contained in the statutory amendment.

Id. at. 784-785.

In this case, the statutory amendment did not decriminalize the actions for which the defendants were indicted. The result of the amendment here was simply to move the language formerly found in subsection (c) of OCGA § 16-5-70 to subsection (d) and change the conduct described therein from second degree to third degree cruelty to children. Ga. L. 2004, p. 57, § 3. The conduct for which defendants were indicted and convicted remained a crime both before and after the enactment of the statutory amendment. Accordingly, this enumeration is without merit.

2. Defendants next contend that the trial court erred by allowing Dr. Krista Barker, a licensed social worker, to testify that she was treating the victim for "exhibiting intrusive thoughts and memories of abuse that are triggered by current events in his life." The transcript shows that the trial court instructed the witness to testify only about the victim's symptoms and her treatment of the victim and further instructed her not to give any testimony concerning any diagnosis she had made; the prosecuting attorney also made clear to the witness that she could not testify that the victim had been abused.

Relying on *Hilliard v. State*, 226 Ga. App. 478 (1) (487 SE2d 81) (1997), and *Allison v. State*, 256 Ga. 851, 853 (5) (353 SE2d 805) (1987), defendants argue they are entitled to a new trial because Dr. Barker's testimony went to the ultimate issue in this case of whether the victim had been abused. We find no error. Unlike the cases defendants rely on, the expert witness in this case did not express an opinion that the victim in fact had been abused or comment or opine that she believed his memories of abuse accurately reflected real events. Rather, we find the expert's testimony in this case to be more akin to that of the expert witnesses in cases such as *Odom v. State*, 243 Ga. App. 227, 228-230 (1) (a), (b), (d) (531 SE2d 207) (2000), and *Cooper v. State*, 200 Ga. App. 560 (2) (408 SE2d 797) (1991),[1] and similar cases in which we held that the experts' testimony was not the expression of an opinion or conclusion that the victim had in fact been abused and did not comment impermissibly on the victim's credibility. The trial court did not err by denying the motion for new trial on this basis.

3. Defendants' argument that the trial court erred by failing to give their requested charges on bare suspicion and mere association is without merit.

---

[1] In *Cooper*, the expert testified the victim suffered from child abuse syndrome. *Cooper*, 200 Ga. App. at 560 (2). In *Odom*, we found witnesses were properly allowed to testify that the victim had been referred for treatment of "alleged" child abuse and that the child's physical exam and related behavior were consistent with sexual abuse, but that it was impermissible for another expert to testify concerning his opinion that the child had been sexually abused. *Odom*, 243 Ga. App. at 228-230.

> It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. The failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principle, is not grounds for reversal.

(Citations and punctuation omitted.) *Carson v. State*, 259 Ga. App. 21, 24 (5) (576 SE2d 12) (2002).

(a) Our review of the transcript shows that the trial court gave accurate and complete instructions to the jury on the presumption of innocence and reasonable doubt. Under these circumstances we have held that the trial court did not err by refusing to give a requested charge on bare suspicion. *Jackson v. State*, 247 Ga. App. 273, 276 (2) (543 SE2d 770) (2000); see also *Carson v. State*, 259 Ga. App. at 24 (5).

(b) We also find no error in the trial court's failure to charge on mere association since the trial court fully charged the jury on mere presence. "[T]he 'mere presence' charge cover[ed] in substance the same principles involved in the requested 'mere association' charge." *Miller v. State*, 249 Ga. 96, 98 (2) (287 SE2d 543) (1982). See also *Robinson v. State*, 278 Ga. 836, 838 (5) (607 SE2d 559) (2005).

4. Lastly, defendants contend the trial court erred by refusing to charge on the lesser included offense of reckless conduct on Counts 2 and 4. Again we find no error.

The following evidence is pertinent to the resolution of this issue. The victim, who was approximately ten or eleven years old at the time of the alleged incidents giving rise to the charges here, testified that Hafez, his stepfather, started tying him up with cords, belts and other objects because he believed that the victim was using drugs. He testified that sometimes he would only be tied up for hours or other short periods of time but that on one occasion he was tied up for a week. During some of those times he was not allowed to go to the restroom and would urinate and defecate on himself. He was subsequently removed from the home when he went to stay with his maternal grandparents, and they learned about him being restrained and saw his injuries. The grandparents testified that when the victim arrived at their home, their daughter Christy, the victim's mother and co-defendant in this case, told them that the victim needed to put antibiotic ointment on wounds he had on his wrists from where they had to tie him up because of his drug problem. The grandparents questioned the victim who told them about the way he had been restrained and showed them wounds on his legs in addition to those on his wrists. The grandparents subsequently contacted authorities so that the victim would not have to return to his home.

Both defendants admitted to authorities that Hafez restrained the victim, and he even demonstrated how in one instance he had used a belt to go around the victim's neck and between his legs so he could not move. This description of how he was tied was almost identical to one that the victim's stepsister had given to authorities on the manner in which the victim had been tied. However, the defendants told authorities that they acted in this manner because the victim was on drugs, they had to help him get off drugs, and they had been unsuccessful in getting him to stop using drugs by other means. Pressley told authorities that they thought the victim was on drugs because his lips were always chapped and red and sometimes had red marks on them. She said he was very "hyper" and "hateful," that he had destroyed his sister's homework one time, and that he did not do his work as he used to.

Hafez testified at trial about how he restrained the victim in order to help him quit using drugs and how he tried unsuccessfully to get help for the victim's drug problem. Hafez testified he thought the victim was doing drugs because his lips were red and his eyes were glassy; he said that after talking with the victim for "hours" the victim eventually admitted he did drugs at the elementary school he attended. Hafez went to the victim's school and asked the principal to investigate, and the principal subsequently reported that she had found no evidence of drug use at the school. And a drug screen on the victim came back negative. Hafez also testified that the victim's injuries were self-inflicted and that the victim scratched his wounds with his nails to get them infected to stop Hafez from restraining him because he did not want to quit using drugs. Hafez denied that he ever intended to inflict physical or mental pain on the victim when he restrained him.

Pressley also testified at trial. She testified that although she was never present when the victim was restrained, she was aware he had to be restrained on certain occasions because Hafez could not be with him all the time to prevent him from doing drugs. She testified it was never her intent to imprison him, that she felt that an addiction was an imprisonment, and that the victim "had imprisoned himself through his addiction. And, actually, we were trying to liberate him and help him get over that."

Count 2 charged defendants with the offense of cruelty to children in the first degree in that they "did maliciously cause [the victim], a child under the age of 18, cruel physical pain by binding [his] arms and legs. . . ." Count 4 also charged defendants with cruelty to children in the first degree in that they "did maliciously cause [the victim], a child under the age of 18, cruel *mental* pain by binding [his] arms and legs. . . ." A person engages in reckless conduct when such person "causes bodily harm to or endangers the bodily safety of

another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person. . . ." OCGA § 16-5-60 (b). "Thus, the crime of reckless conduct is, in essence, an instance of criminal negligence, rather than an intentional act, which causes bodily harm to or endangers the bodily safety of another." (Citation and punctuation omitted.) *Allen v. State*, 247 Ga. App. 10, 15 (3) (543 SE2d 45) (2000).

First, we note that Count 4 charged defendants with causing the victim cruel *mental* pain by binding his arms and legs. Reckless conduct requires either bodily harm or endangering the bodily safety of another and clearly would not be adjusted to this Count. It was not error to fail to give a charge on reckless conduct as a lesser included offense of Count 4.

As to Count 2, the defendants' defense in this case was that they were acting out of love to prevent the victim from doing drugs. Thus, the theory of defense here, as the trial court found in refusing to give the requested charge on reckless conduct, was one of justification. The trial court did charge on this defense. See *Berry v. State*, 282 Ga. 376, 382 (5) (651 SE2d 1) (2007) (failure to give charge on reckless conduct not error when defense was justification). Moreover, Hafez testified that the victim's wounds were self-inflicted and that they treated the wounds when they saw them. Thus, while Hafez admitted he restrained the victim, he also put forth the defense that the victim caused his own injuries. In light of the foregoing, the trial court did not err by refusing to give the requested charge on reckless conduct. See *Allen v. State*, 247 Ga. App. at 15 (3) (b).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 21, 2008 —
RECONSIDERATION DENIED APRIL 8, 2008.

*Good & Lee, Darice M. Good*, for appellants.
*Timothy G. Madison, District Attorney, James B. Smith, Allison T. Mauldin, Assistant District Attorneys*, for appellee.