## A08A1998. SINGLETON v. THE STATE.
### (667 SE2d 348)

ADAMS, Judge.

Henry Singleton was convicted of trafficking in cocaine and fleeing and attempting to elude a law enforcement officer. He appeals following the denial of his motion for new trial.

Construed to support the verdict, as we must on appeal, the evidence showed that Sergeant Paul Preston of the Kingsland Police Department stopped the van Singleton was riding in for a tag light violation. In addition to Lawrence Dash, who was driving, and Singleton, who was riding in the back bench seat alone, there were two other passengers in the vehicle. At one point during the stop, Preston shined his flashlight into the vehicle for his safety. He noticed a blue Wal-Mart bag beside Singleton's foot and testified that Singleton appeared to be pushing the bag away along the floor but that when Singleton saw his light, Singleton stopped and pulled his foot away from the bag. Preston found Singleton's behavior "odd" and based on that and other observations during the stop, which primarily concerned things said and done by Dash and the other passengers, he called for backup.

After Preston issued the citation for the nonilluminated tag light, he asked Dash for permission to walk his drug detection canine around the vehicle, and Dash consented. The dog alerted at the rear door seam of the van, in "exactly the area where [Singleton] was seated . . . and where [the Wal-Mart] bag was located on the floor."

Preston then explained to Dash that he now had probable cause to search the vehicle. However, before Preston could open the door to begin the search, the van started rocking and he saw Singleton run from the back of the van to the front, get in the driver's seat and take off northbound on the interstate. Preston gave chase for nine to ten miles, reaching speeds of 85 to 90 miles an hour. One of the deputies who had joined the chase forced Singleton off the road, and the van flipped. Singleton nevertheless refused to exit the van, so the officers kicked in the back window and pulled him out. Singleton then refused to stay on the ground, and tried to get up several times. A search of Singleton's person revealed $3,745 in his pocket; but a search of the van did not uncover the Wal-Mart bag. Singleton told Preston he threw a bag and about an ounce of marijuana out of the van. A blue Wal-Mart bag tied at the top was shortly thereafter found about 40 to 50 yards from the original stop area. Inside the Wal-Mart bag were two separate plastic bags, each containing what appeared to

be a brick or hard block of cocaine; subsequent testing confirmed the substance to be cocaine.

Dash testified that he entered a guilty plea to a charge of trafficking in cocaine the day before Singleton's trial. Dash admitted that after his arrest he gave a statement trying to "pin" the trafficking charge on Singleton, but that he later recanted and wrote a letter to the district attorney taking responsibility for the cocaine. At trial he testified that Singleton did not know that the purpose of their trip from South Carolina to Jacksonville, Florida was to purchase cocaine and that Singleton did not know the cocaine was in the van until Preston pulled them over. After his initial statement implicating Singleton was presented to the jury, Dash testified that he gave that statement because he thought it would help him get a bond, which had been set very high, and because he thought that Singleton would get treated with greater leniency because Singleton did not have a record and he did.

Singleton also testified that Dash did not tell him about the cocaine until they were stopped, and that before he got out of the car Dash repositioned the bag containing the cocaine, which had been under the front passenger seat, so that it was on the passenger floorboard side in the back, near Singleton's foot. Singleton testified that he never touched the drugs, but after the dog alerted he decided to attempt to flee because he had a small amount of marijuana on him. He testified he never touched the cocaine or the bag it was in and that the front seat passenger threw the cocaine out of the window while they were attempting to flee.

1. Singleton first argues that the trial court erred by allowing Preston to testify concerning his observations about how the occupants of the vehicle acted and responded during the stop, arguing that the officer should not have been allowed to give his opinion about what this behavior meant in terms of suspecting criminal activity or deception because the assumptions Preston made from his observations were merely conjecture and surmise. Singleton also contends that Preston's testimony went to the ultimate issue and thus invaded the factfinding province of the jury. We find no merit to these contentions.

In addition to observing Singleton attempt to push the bag away with his foot, Preston testified about several things the occupants of the vehicle did or said, such as lack of eye contact, the fact that the passenger did not know what city they were traveling to in Florida, and being overly talkative about irrelevant matters, that made him suspicious of wrongdoing or that he found odd or puzzling. Thus

> [Preston] merely testified about what he observed regard-
> ing [Singleton's and the other occupants'] appearance and

> behavior and the assumptions he made based upon such observations. A lay witness may relate his or her opinion as to the existence of any fact so long as the opinion is based upon the person's own experiences and observations, and so long as the matter referred to is within the scope of the average juror's knowledge.

*Harris v. State*, 279 Ga. 304, 305-306 (1) (612 SE2d 789) (2005). See also *Weston v. State*, 276 Ga. 680, 682 (3) (580 SE2d 204) (2003). And contrary to Singleton's further argument, Preston's testimony did not impermissibly invade the province of the jury as to the ultimate issue of guilt. See *Pittman v. State*, 274 Ga. 260, 261-262 (2) (553 SE2d 616) (2001).

2. Singleton also contends that the trial court erred by refusing to give his request to charge on bare suspicion.

> It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. The failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principle, is not grounds for reversal. (Citations and punctuation omitted.) *Carson v. State*, 259 Ga. App. 21, 24 (5) (576 SE2d 12) (2002). . . . Our review of the transcript shows that the trial court gave accurate and complete instructions to the jury on the presumption of innocence and reasonable doubt. Under these circumstances we have held that the trial court did not err by refusing to give a requested charge on bare suspicion. *Jackson v. State*, 247 Ga. App. 273, 276 (2) (543 SE2d 770) (2000); see also *Carson v. State*, 259 Ga. App. at 24 (5).

*Hafez v. State*, 290 Ga. App. 800, 802 (3) (660 SE2d 787) (2008). See also *Range v. State*, 289 Ga. App. 727, 729-730 (3) (658 SE2d 245) (2008). This enumeration thus also affords no basis for reversal.

3. Singleton next contends the evidence was insufficient to support his conviction on the trafficking charge, and thus the trial court erred by refusing to grant his motion for directed verdict on that count.

> The standard of review for the sufficiency of the evidence, in reviewing either a motion for directed verdict or a motion for new trial, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We view the evidence in the light most favorable

to the verdict, and [Singleton] no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)]. Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Punctuation omitted.) *Holloway v. State*, 268 Ga. App. 300 (601 SE2d 753) (2004).

Although this Court has repeatedly noted that evidence of mere spatial proximity combined with flight is insufficient to connect a defendant to nearby contraband, *Coney v. State*, 290 Ga. App. 364, 373 (3) (c), n. 45 (659 SE2d 768) (2008), in this case, in addition to evidence that Singleton tried to flee once the presence of the contraband was detected by the drug dog, the contraband was observed right by Singleton's foot and he appeared to be using his foot to push the contraband away when the officer shined his light on him. Additionally, he told Preston that he threw a bag out of the window, and a large amount of cash was found on his person. Moreover, the jury was also entitled to consider Dash's prior inconsistent statement implicating Singleton in the trafficking offense. This and other evidence presented at trial was sufficient to authorize the jury's verdict convicting Singleton of trafficking in cocaine, and the trial court did not err in denying his motion for directed verdict. E.g., *Fraser v. State*, 283 Ga. App. 477, 479 (1) (642 SE2d 129) (2007).

4. Lastly, Singleton argues that he was improperly sentenced under OCGA § 16-13-31 (a) (1) (B), which sets forth the mandatory minimum sentence for possession of 200 or more grams of cocaine, because the indictment only charged that he did "knowingly possess more than 28 grams of cocaine, . . . a mixture with a purity of more than 10 percent."[1] Singleton concedes this argument has previously been decided adversely to him by this Court and we decline to overrule those cases as Singleton urges. As we recently reiterated in *Smith v. State*, 296 Ga. App. 427 (674 SE2d 643) (2009), citing *Moon v. State*, 194 Ga. App. 777, 780 (4) (392 SE2d 19) (1990),

(i)t is the *conviction* of the specific trafficking offense which authorizes the particular sentence, and not the language of

---

[1] Based on the testimony of the forensic expert, the jury returned a verdict specifically finding that the cocaine in Singleton's possession weighed 245.64 grams.

the indictment, which correctly charged [Singleton] with possession [of] ("twenty-eight (28) grams or more of a mixture containing at least ten percent (10%) cocaine"). . . . The sentence was within the maximum sentence for the offense (see OCGA § 16-13-31 (h)) and is therefore not invalid or illegal.

(Punctuation omitted.) This enumeration is thus also without merit. *Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 23, 2009 —
RECONSIDERATION DENIED APRIL 10, 2009.

*Joseph E. East*, for appellant.
*Stephen D. Kelley, District Attorney, Diane L. Dodd, Assistant District Attorney*, for appellee.