## 67806. EARLY v. THE STATE.

DEEN, Presiding Judge.

The appellant, Clinton Early, was indicted and tried for murder and felony murder but convicted of involuntary manslaughter. He was sentenced to five years imprisonment, and this appeal followed.

Late on December 2, 1982, the appellant took his wife to the emergency room of the Glynn-Brunswick Memorial Hospital and left her there. Because the appellant's wife appeared to have been severely beaten, and because of the appellant's quick departure, the hospital personnel contacted the police. In the early hours of December 3, 1982, the police contacted the appellant at his residence, requested that he follow them down to the police station, and, after advising him of his rights, took his statement.

At that time, the appellant explained that on or about November 23, 1982, several men had raped and struck his wife. He had not discovered this until Thanksgiving day, when his daughter informed him, and he then quarrelled with his wife. During this argument, he hit his wife four or five times, breaking a broom on her in the process. The wound on his wife's head had resulted from the latter's fall in the bath tub, and the appellant claimed not to know how his wife had injured her legs.

At the trial, Dr. William Grubb testified that the appellant's wife was admitted to the hospital with several, severely infected wounds and advanced kidney failure. Although there was a small cut above her right knee and bruises on her right arm and back, the major lesions included a laceration, approximately two inches deep and two inches long, on her left thigh, adjacent to which there was a large area of dead skin and decayed flesh, and an open laceration on her upper forehead. Dr. Grubb explained that the large area of dead skin appeared to be a pressure injury, caused by lying on a hard surface for a long time (most probably one or two days) and thus cutting off the blood circulation, but it was possible that it resulted from a severe bruise. The state presented the theory that the appellant had struck his wife with a decorative piece of wood from a television set, and Dr. Grubb felt that the head wound and the various bruises could have been inflicted with such an article but not the deep laceration on the thigh, unless the metal brackets on the wood had been involved.

At the time of her admission, the appellant's wife was in critical condition and was considered to have only a small chance of survival.

During the hospitalization, there were a few brief periods of some improvement, but her condition generally deteriorated until she died on January 27, 1983. In his opinion, Dr. Grubb believed the cause of death was shock resulting from the severe infection which was bloodborn; he further believed that the most likely portals of entry for the bacteria that caused the infection and death had been the severe wounds.

Dr. Grubb noted that the appellant's wife had suffered systemic lupus for approximately two years prior to her death, that a person with lupus was more susceptible to infection and kidney failure, and that she also had a very old decubitus at the end of her spine; however, he explained that decubitus only infrequently became the source of bloodborn infection, and that the infection no doubt resulting from the wounds to the thigh and head alone had been sufficient to cause death and had, in fact, materially and directly contributed to the death of the appellant's wife. Dr. Grubb doubted that lupus caused the fatal episodes of infection. The physician also noted that had treatment been sought earlier, before the wounds became so infected, death would not have resulted.

Dr. David Griffin had performed the autopsy on the appellant's wife, and observed badly infected stab wounds on her head, above the left knee and ankle. The only pressure injury he noticed was about both of her heels. The decedent also had severe infection of the intestines. Dr. Griffin concluded that the wounds and concomitant infection materially contributed to the death. He found nothing to establish the cause of death to be lupus, but he admitted that he had not extensively tested for that possibility. Dr. Astor Lim, who testified for the defense, also pointed out that a person suffering from lupus has a very low resistance to infection.

Rosa Gardner, the mother of the appellant's wife, testified that when she had seen her daughter the day before Thanksgiving, her daughter had no marks or swelling, and that her daughter had experienced no recent problems with lupus. She had not seen her daughter on Thanksgiving day, but she did see the appellant, who told her that he had slapped his wife a couple of times and that she was in bed. She next saw her daughter on the night of the hospitalization, at which time she was shocked over how beaten her daughter was. She asked her daughter if the appellant had beaten her so, but her daughter denied it. The appellant, however, told her that he had beaten his wife because she had a sexual encounter with five men. Soon after the hospitalization, she again asked her daughter what had happened, and her daughter finally told her that the appellant had beaten and cut her and had threatened to finish killing her if she told anyone.

Trelisial Early, the eight-year-old daughter of the appellant and his wife, testified that around Thanksgiving day she saw the appellant

strike her mother with a broom handle, breaking the handle in doing so, and that the appellant had also struck her with a piece of wood off the television set. She saw the appellant hit her mother on the leg but not on the head, although she noticed blood on her mother's head. She also remembered that around Thanksgiving her mother had fallen in the bathtub.

On appeal, Early contends that the trial court erred in finding the appellant's eight-year-old daughter competent to testify; that the decedent's statement to her mother, during the hospitalization, was improperly admitted; that the evidence seized from the appellant's residence should have been suppressed; that the trial court should have declared a mistrial because of certain prejudicial hearsay statements recounted by a state's witness; that the trial court erred in allowing the district attorney to keep a wrapped object on his table; and that the evidence was insufficient to establish that the appellant's acts had caused the death of his wife. *Held*:

1. The appellant contends that his eight-year-old daughter was incompetent to testify at the trial. "[T]he standard of intelligence required to qualify a child as a witness is not that he be able to define the meaning of an oath, nor that he understand the process under which the oath is administered, but rather that he know and appreciate the fact that as a witness he assumes a solemn and binding obligation to tell the truth relative to the case and concerning such matters as he may be interrogated on, and that if he violates the obligation he is subject to be punished by the court." *Jones v. State*, 219 Ga. 245, 246 (132 SE2d 648) (1963); accord, *Smith v. State*, 247 Ga. 511 (277 SE2d 53) (1981).

In this case, the appellant's daughter testified that she knew the difference between telling the truth and telling a lie; that she realized that she was supposed to tell the truth at the trial; and that she understood that she could be punished for not telling the truth. This testimony sufficiently demonstrated that she understood both that she had an obligation to tell the truth and that she was subject to punishment if she did not do so. *Arnold v. State*, 167 Ga. App. 720 (307 SE2d 526) (1983); *Mackler v. State*, 164 Ga. App. 874 (298 SE2d 589) (1982). Accordingly, the trial court properly allowed her to testify.

2. Under OCGA § 24-3-6, "[d]eclarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." The appellant contends that the trial court erred in allowing testimony about statements made by the appellant's wife during the latter's final hospitalization, because she did not realize that she was dying.

At the time the appellant's wife explained to her mother why she

had earlier denied that the appellant had beaten her, she made no overt statement of any awareness that she was actually dying. However, such consciousness of impending death may be inferred from the statements, the nature of the wounds, and other circumstances. *Patterson v. State*, 199 Ga. 773 (35 SE2d 504) (1945); *Satterfield v. State*, 68 Ga. App. 7 (21 SE2d 861) (1942). The physical wounds, while perhaps not initially mortal, suffered by the appellant's wife were gangrenous, with an area of flesh actually decayed, and she had advanced kidney failure; the condition of the wounds at the time of the declaration was sufficient to create a fear of death. Moreover, the nature of her statement and explanation certainly could support the inference that she believed herself to be dying and thus no longer availed by silence. The foundation for the admission of the dying declaration was prima facie established in this case, and the ultimate determination as to whether the appellant's wife actually realized her impending death was a matter properly submitted to the jury. *Carter v. State*, 227 Ga. 788 (183 SE2d 392) (1971); *Satterfield v. State*, supra. See also *Parker v. State*, 197 Ga. 340 (29 SE2d 61) (1944).

The fact that the appellant's wife survived another 54 days following the declaration does not require an opposite result. A lapse of time between the declaration and the time of death may be some evidence that the declarant has not despaired of recovery, but it is not controlling. *Emmett v. State*, 195 Ga. 517 (25 SE2d 9), cert. denied 320 U. S. 774 (64 SC 76, 88 LE 464), overruled on other grounds, *Howard v. State*, 237 Ga. 471 (228 SE2d 860) (1976) (declaration three and one half months before actual death held admissible); accord, *Miles v. State*, 182 Ga. 75 (185 SE 286) (1936) (admissible declaration made 33 or 34 days before death). Following the declaration, which was made at the beginning of the hospitalization, the condition of the appellant's wife steadily deteriorated and there was no further communication; in short, the evidence, despite the prolonged length of survival, contraindicated any hope for recovery.

3. The appellant next contends that the trial court should have declared a mistrial because of certain hearsay statements recounted in the jury's presence. While testifying about the execution of the search warrant at the appellant's premises, a police officer recounted that the appellant's daughter handed him the piece of wood and stated "this is what my daddy beat momma with." Counsel for the appellant immediately objected, and the trial court instructed the jury to disregard that statement unless the state demonstrated that it explained subsequent conduct of the investigating officer and that under no circumstance was the jury to place any credence in the veracity of the statement. Subsequently, the officer also remarked that the crime lab report indicated that blood stains were on the piece of wood, although it could not determine whether the blood was human or not. The ap-

pellant's counsel again objected, and the trial court instructed the jury that it could not consider that remark.

Since the appellant's daughter actually testified at trial about her father striking her mother with the piece of wood, the police officer's hearsay version was merely cumulative. In any event, we find neither remark, while inadmissible hearsay, to have resulted in harm so great and prejudicial that could not be removed by an adequate, curative instruction to the jury by the trial court, as was done in this case. See *Woods v. State*, 233 Ga. 495 (212 SE2d 322) (1975); *Griffin v. State*, 97 Ga. App. 772 (104 SE2d 511) (1958).

4. In the affidavit given in support of the search warrant, the averring officer stated that "Clinton Early has been charged with aggravated assault on the person of his wife, Betty Early. Betty Early is in intensive care at the Glynn-Brunswick Memorial Hospital. Mrs. Early has identified her husband as her assailant. Witnesses have identified the weapons used as a broken broom handle and a piece of television set back. The assault occurred at 2306 6th Street, Brunswick, Glynn County Georgia, the residence of the Early's. Witnesses have given information to Officer Jim Thomas that the broom handle and piece of television back are at the residence. Mr. Early has been incarcerated since his arrest on December 3, 1982."

In Illinois v. Gates, ___ U. S. ___ (103 SC 2317, 76 LE2d 527) (1983), the Supreme Court abandoned the two-pronged test of evaluating the sufficiency of search warrant affidavits, developed from Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723), and Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637), which required a showing of the informer's veracity and the basis of his knowledge, and adopted a "totality of the circumstances" approach. "The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Illinois v. Gates, supra, page 23 of slip opinion.

In the instant case, while the averring officer failed to specify in the affidavit the identity of the witnesses and to demonstrate their credibility or reliability, certainly the affidavit was sufficient to support the warrant under the "totality of the circumstances" standard. The affidavit, submitted on December 6, 1982, delineated circumstances which created at least a fair probability that the instrumentalities of the assault could be found in the appellant's residence and provided the substantial basis requisite for concluding that probable

cause existed.

We reject the appellant's related contention that the search must be considered illegal, thus requiring suppression of the evidence seized, because at trial the state produced only a photocopy of the search warrant. OCGA § 24-5-21 provides that "[i]f a paper shall have been lost or destroyed, proof of the fact to the court shall admit secondary evidence. The question of diligence is one for the sound discretion of the court." In this case, the issuing magistrate testified that he had searched both his 1982 and 1983 files and had not found the original warrant, and the police officer who executed the warrant similarly found only the photocopy in his file. This was sufficient evidence that the original warrant had been lost, and we find no abuse of discretion in the trial court's admission of the photocopy.

5. Counsel for the appellant objected to the district attorney's leaving a wrapped object on the prosecution table until the object (the piece of wood) was admitted into evidence. The object was completely covered by paper wrapping, and no part had been exposed to the jury until it was marked by the court reporter and identified by the witnesses (and admitted into evidence); review of the transcript shows no effort by the state to draw attention to the wrapped object on the table. Under these circumstances, we find no merit to the appellant's assertion that the "display" of the wrapped object prejudiced him by drawing the attention of the jury before the object was actually admitted into evidence. See *Ezzard v. State*, 155 Ga. App. 594 (271 SE2d 728) (1980); *Leonard v. State*, 146 Ga. App. 439 (246 SE2d 450) (1978).

6. The appellant also asserts the general grounds, emphasizing that the evidence was insufficient to establish beyond a reasonable doubt that he caused the death of his wife. "Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of the death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause." *Wilson v. State*, 190 Ga. 824, 829 (10 SE2d 861) (1940); *James v. State*, 250 Ga. 655, 656 (300 SE2d 492) (1983). In the instant case, while there was some medical evidence that the appellant's wife's pre-existing lupus may have contributed to her kidney failure and made her more susceptible to infection, all of the medical experts were unequivocally of the opinion that the physical injuries inflicted on the decedent and the resulting infection (along with the prolonged neglect) directly and materially contributed to the death. The evidence was sufficient to support the jury's finding that the appellant did beat his wife and thereby caused

her death, under the test declared in *Wilson v. State*, supra, and *James v. State*, supra. Viewing the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found the appellant guilty beyond a reasonable doubt of involuntary manslaughter. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *James v. State*, supra.

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED FEBRUARY 23, 1984 —
REHEARING DENIED MARCH 7, 1984 —

Roger B. Lane, C. Darrell Gossett, for appellant.
Glenn Thomas Jr., District Attorney, E. Jerrell Ramsey, Assistant District Attorney, for appellee.