S11G1820. THE STATE v. HODGES.
(728 SE2d 582)

HINES, Justice.

This Court granted certiorari to the Court of Appeals in *Hodges v. State*, 311 Ga. App. 46 (714 SE2d 717) (2011), to consider whether that Court erred in holding that the defendant should have been allowed to present evidence in support of his justification defense about a previous incident of violence allegedly committed by the victim against third parties, where the defendant claimed that he had heard of the previous incident but did not witness it or have any other evidence in support of the claim. For the reasons that follow, we conclude that the holding was in error, and we reverse the judgment of the Court of Appeals.

On February 9, 2006, Mario Hodges shot and killed Rudy Turner. Turner was killed in Hodges's home, where Turner had stayed the night before the shooting. At the time of the incident, Hodges and Turner had been "on-again, off-again" friends for about five years. The two men had fought in the past, and were in a physical altercation over a debt Hodges owed to Turner seven months before the shooting.

Prior to Turner arriving at Hodges's home, he had been staying with mutual friends. Turner asked Hodges to pick him up the night before the shooting because he and the friends had "gotten into a disagreement." Hodges did so, and Turner slept at Hodges's home

that night. The next day, Turner was agitated about various people that were indebted to him, including Hodges, and told Hodges that he wanted his money. Turner became angrier as the day went on. He told Hodges that he was "going to get" the people who owed him money, and if they failed to pay, he would "go after their relatives or the people they love."

Turner went upstairs to Hodges's home office, where Hodges had a collection of weapons, which included a flail with attached spiked metal balls, a machete, and a large "Arabian knife." Turner brought the weapons downstairs one at a time and made threatening comments and gestures directed at Hodges and the others that owed him money. Hodges instructed Turner to return the weapons each time Turner came down with one and told him to leave the residence. After Turner went upstairs with the machete, Hodges got his shotgun and placed it near his seat. When Turner came downstairs a third time, he was armed with the Arabian knife. Hodges testified that Turner "just snapped," went "berserk," and approached Hodges who said that he thought Turner meant to harm him. Hodges shot Turner, who turned and ran up the stairs. Hodges said he did not know what weapons Turner had as "he [was] known to carry guns." Hodges also testified that he thought his first shot missed Turner, so he followed Turner up the stairs and shot him a second time. Hodges thought this second shot hit Turner because he fell, but when Turner "made a move" on the floor, Hodges hit Turner with the shotgun, which discharged a third time. The first shot proved to be the fatal strike.

Hodges then called 911, reported his location, and told the operator he had shot Turner while defending himself. Two officers dispatched to the scene found Turner's dead body upstairs in Hodges's home. A knife was located about six feet from Turner's body. When interviewed by the police, Hodges waived his *Miranda*[1] rights and told detectives that the incident began when Turner threatened him and Hodges's daughter.

A jury found Hodges guilty of involuntary manslaughter as a lesser included offense of felony murder, aggravated assault based upon Hodges firing the second shot, and possession of a firearm during the commission of aggravated assault. At trial, Hodges presented a justification defense pursuant to OCGA § 16-3-21 (a).[2]

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] OCGA § 16-3-21 (a) provides:

A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is

Hodges sought, pre-trial, to introduce evidence that Turner had acted violently toward other people on several occasions, all of which Hodges had heard about before he killed Turner. Two of the three incidents were allowed into evidence and involved Turner's violent acts towards the friends with whom he was living before Hodges brought Turner to his home the night before the shooting; in fact, one of the incidents precipitated Turner's departure. In regard to the alleged third incident, Hodges sought to testify that after his fight with Turner seven months prior to the fatal shooting, a friend told Hodges that Turner had shot at her and her daughter. Hodges argued that his testimony about the purported incident would explain his state of mind and fear for his personal safety when he shot Turner. The trial court refused to allow the testimony because there was no independent evidence about Turner's alleged acts of violence available to make the requisite showing of admissibility.

The Court of Appeals reversed, finding that the testimony was admissible, pursuant to OCGA § 24-3-2, as "original, admissible, competent evidence" of Hodges's state of mind to explain his conduct, and that its exclusion was harmful error. We disagree.

In *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991), this Court permitted specific acts of violence by a victim against third persons to be admitted into evidence in the situation in which a defendant claims justification; the defendant has to demonstrate the admissibility of *Chandler* evidence, and at a minimum, must follow the procedural requirements for introducing the evidence, establish by *competent* evidence the existence of prior violent acts, and make a prima facie showing of justification. *Spencer v. State*, 287 Ga. 434, 435-436 (2) (a) (696 SE2d 617) (2010). This prevents the introduction into evidence of unreliable hearsay. Id. at 438 (2) (c).

Yet, the Court of Appeals has ruled in this case that the safeguards of *Chandler* can be disregarded because Hodges stated that he wanted to testify about the alleged additional incident of the victim's violence to others in order to demonstrate Hodges's state of mind. But, this Court has addressed precisely this issue in *Hill v. State*, 272 Ga. 805 (537 SE2d 75) (2000). In that case, Hill, testifying in his defense, maintained that he shot the victim in self-defense because he believed that the victim was attempting to get a gun when he reached into his car. However, the trial court refused to allow Hill to testify about the victim's alleged prior violent acts against third

---

justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

parties. Hill argued to this Court that he should have been allowed to testify about the victim's reputation for violence, based upon the alleged prior violent acts, for the sole purpose of showing Hill's state of mind at the time that he fatally shot the victim. Id. at 806 (3). This Court soundly rejected the argument, finding that the sought testimony was inadmissible because there was no evidence that the victim was the aggressor or assaulted Hill, and that Hill's hearsay testimony was not competent to establish evidence of the victim's alleged prior violent acts. Id.

The holding in *Hill* is premised on well-established procedural and substantive principles regarding the admission of evidence in the context of a criminal proceeding. First, as *Hill* readily acknowledges, in general a murder victim's reputation for violence is irrelevant and inadmissible in criminal proceedings, but that it may be offered as evidence by the accused upon the accused making a prima facie showing that the victim was the aggressor and was assaulting the accused, who was acting to defend himself. *Woods v. State*, 269 Ga. 60, 63 (5) (495 SE2d 282) (1998). If such showing is made, evidence of the victim's reputation for violence is then admissible to corroborate the accused's story that the victim was violent when the accused killed the victim, and that the accused acted in reasonable fear in doing so. Id.

Recently, this Court in *Render v. State*, 288 Ga. 420 (704 SE2d 767) (2011), considered and rejected the argument that there are "two prongs" or methods by which a defendant may have admitted into evidence prior violent acts of the victim against third parties. Render acknowledged this Court's holding in *Chandler*, yet, he urged that *Chandler* had no applicability to his case in that there was no competent evidence of specific violent acts by the victim against other parties which the defense could have presented. He argued, that instead, "his situation was governed . . . by 'longstanding, statutorily-based evidentiary law' relating to self-defense, namely permitting evidence of his motivation or state of mind at the time of the shooting, as permitted by OCGA § 24-3-2." *Render* at 422 (2) (a). He contended that his trial counsel was deficient for not attempting to introduce such evidence under authority of OCGA § 24-3-2, as it " 'would have allowed the jury to understand the reasonable nature' of his fear of the victim," which he claimed was crucial to his sole defense of justification/self-defense. *Render* at 422 (2) (a).

This Court acknowledged that OCGA § 24-3-2 would permit evidence of alleged threats from the victim in certain narrow circumstances and when such evidence is offered not for the truth of the matter asserted but rather to show the victim's violent state of mind; however, we cautioned that such evidence is admissible only when

there is a conflict in the evidence as to who instigated the fight leading to the fatal incident, to corroborate evidence of communicated threats, or to establish the attitude of the deceased. *Render* at 423 (2) (a). But, Render sought to introduce into evidence his unsupported claim that he had heard from the victim's friends that they were scared that the victim would hurt them if they testified against him and that the victim had killed three or four people, that is, that Render had knowledge of the victim's violence which made his alleged fear reasonable at the time he shot the victim. This is precisely the situation in Hodges's case, i.e., alleged evidence in the form of unsupported assertions by the defendant as to what was in his mind at the time he killed the victim. And, as we noted in *Render*, it is certainly the case that when a defendant claims he justifiably used force in self-defense, evidence of the victim's prior acts of violence can be relevant "to support the defendant's claim that the victim assaulted the defendant in accordance with this violent character." Id. That is the type of evidence contemplated in and controlled by *Chandler*. In *Chandler*, this Court fashioned the rule concerning the admission of prior specific acts of violence by the victim in accord with the special concurrence of Justice Weltner in *Lolley v. State*, 259 Ga. 605, 607-610 (385 SE2d 285) (1989). In that special concurrence, Justice Weltner emphasized that a linchpin of the "chain of reason" permitting the defendant to have admitted into evidence specific prior acts of violence by the victim in support of the defendant's claim that the killing of the victim was justified was that the defendant *prove* that the victim committed the prior acts of violence. Id. at 609.

OCGA § 24-3-2, upon which the Court of Appeals analysis relies and which is the basis of Hodges's argument for permitting the sought testimony as original evidence rather then hearsay, by its express terms, requires that the evidence in question be "*facts* to explain conduct and ascertain motives." (Emphasis supplied.) Furthermore, this Court has refused to permit this statute to give a criminal defendant unbridled license to avoid the bar of hearsay and thereby introduce self-serving statements into evidence. See *Arp v. State*, 249 Ga. 403 (2) (291 SE2d 495) (1982).

Certainly, there is a theoretical distinction to be made between the offer of evidence of prior violent acts by the victim against third parties to show that the victim was indeed the aggressor in the fatal episode with the defendant and the defendant's desire to introduce such evidence for the purpose of showing the defendant's state of mind at the time the defendant killed the victim. But, it is a distinction without a real difference in regard to the ultimate determination to be made by the factfinder in regard to a defendant's assertion of self-defense, i.e., whether the killing was legally justified.

In *Harris v. State*, 279 Ga. 304 (612 SE2d 789) (2005), the defendant asserted that he previously had been shot, and that the effect of the shooting on his state of mind was important to his claims of justification and self-defense in his killing of the victim. This Court determined that Harris's complaint was unavailing inasmuch as a defendant is not permitted to support a justification defense with an explanation that he or she had been the victim of an earlier attack. Id. at 308 (3) (c). We explained the rationale: the evidence is simply not relevant to the critical question in the defense of justification, that is, "whether the circumstances surrounding the commission of the crimes on trial would have excited the fears of an objective reasonable person to the point where the defendant's actions were justified." Id. However, that is not to say that evidence of violent acts committed by the victim against either the defendant or against third parties is not relevant to this inquiry, but that evidence may be introduced by a criminal defendant claiming justification pursuant to *Chandler*. *Lewis v. State*, 270 Ga. 891, 893 (2) (515 SE2d 382) (1999). And, that is so because the key showing must be that the victim was the aggressor in the fatal encounter.

As the dissenting opinion in the Court of Appeals in this case aptly noted, the opinion of the majority of that Court would create a new rule of evidence, not supported by precedent, and in fact, belied by the caselaw. It permits a defendant to circumvent the substantive and procedural safeguards of *Chandler*, merely by asserting that the sought evidence of the victim's alleged violence against a third party is for the purpose of showing the defendant's state of mind. Moreover, it muddies the waters about the critical question at hand in regard to the defendant's justification defense, that is, whether the circumstances of the fatal incident were such that they would excite not merely the fears of the defendant but the fears of a reasonable person. *Payne v. State*, 289 Ga. 691, 698 (4) (715 SE2d 104) (2011).

The trial court correctly refused to allow Hodges to testify about the unsupported alleged violent incident involving the victim and third parties.[3]

The judgment of the Court of Appeals cannot stand.

*Judgment reversed. All the Justices concur, except Carley, C. J., and Melton and Nahmias, JJ., who concur specially.*

---

[3] It is noteworthy that inasmuch as two incidents of the victim's violence toward third parties were admissible into evidence, the jury was made aware of the possible perception of the victim as a violent person, thereby permitting the inference of Hodges's allegedly fearful state of mind with regard to the victim.

NAHMIAS, Justice, concurring specially.

The question presented in this case is whether a criminal defendant may support his claim that he acted in self-defense with evidence that he had heard about prior violent acts allegedly committed by the victim against third parties, because, even though he cannot prove that what he heard actually happened, the information made it more reasonable for him to believe that the victim was about to use unlawful force against him too. See OCGA § 16-3-21 (a) ("[A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she *reasonably believes* that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony." (emphasis added)).

I disagree with the majority's claims that *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991), controls this issue; that this sort of evidence is hearsay; and that this Court has precedent directly on point. I therefore believe the question is harder, and less settled, than the majority opinion suggests. However, I ultimately concur in the majority's result — reversal of the Court of Appeals — because in almost all cases, as in this case, the trial court does not abuse its discretion in excluding this sort of evidence, which usually will have minimal probative value while posing a serious risk of prejudice.

1. The majority says that questions of evidence related to the victim's prior violent acts are "controlled by *Chandler*." Maj. Op. at 417.[4] But *Chandler* deals with an evidentiary issue different from the one presented in this case, and "[i]t is a cardinal rule of evidence that if evidence is duly admissible under any legitimate theory, it should be admitted even though it does not qualify for admission under one or more other evidentiary theories." *Buttles v. State*, 229 Ga. App. 300, 302 (494 SE2d 73) (1997) (citation and punctuation omitted).

Overruling prior case law, *Chandler* held that "evidence of specific acts of violence by a victim against third persons shall be admissible where the defendant claims justification." 261 Ga. at 407. The *Chandler* majority did not discuss the rationale for this new rule, instead simply saying that the Court now found "persuasive" the reasoning of Justice Weltner's special concurrence in *Lolley v. State*, 259 Ga. 605, 607-610 (385 SE2d 285) (1989). *Chandler*, 261 Ga. at 407. Justice Weltner had explained that, in certain circumstances involving a defendant's claim of self-defense, "evidence of the violent

---

[4] Like the majority opinion and most of our cases, I will use the term "victim" to refer to the person assaulted or killed by the defendant. Of course, in a case raising a self-defense claim, whether that person is truly a victim or instead a violent aggressor is the issue for the jury to decide.

nature of a victim can be critically important to the discovery of truth," sufficient to overcome the presumption that the character of the victim for violence is generally irrelevant and inadmissible. See *Lolley*, 259 Ga. at 608. Justice Weltner gave two examples of such circumstances.

The second example was adopted in *Chandler* and has become known as "*Chandler* evidence." It pertains to the dispute about *what happened* during the confrontation between the defendant and the victim:

> [T]he [town] ruffian approaches a stranger, and is killed by him. There are no eyewitnesses to the homicide. The defendant relates that the decedent advanced upon him in a drunken and enraged state, threatening him with mayhem. The decedent had no weapon. At trial, the defendant, who had no knowledge of the decedent before the killing, offers evidence of his violent nature, through specific acts of violence against third persons.

*Lolley*, 259 Ga. at 609. Justice Weltner explained that, "[h]ere the principal question is the credibility of the defendant. Did [the confrontation] happen the way he related it? And why would the decedent make an unprovoked advance upon the defendant?" Id. On this issue, the Court had long allowed the State to offer evidence of prior violent acts by the defendant against the victim, and the defendant to offer evidence of prior violent acts by the victim against him. See id. Justice Weltner's position, adopted by the Court in *Chandler*, was that "a decedent's violent acts against a third party can be as relevant as his violent acts against a defendant in weighing *the truth of a defendant's claim of justification.*" Id. at 610 (emphasis added).

Thus, the rationale of *Chandler* is that, when a defendant claims that the victim was the aggressor in a confrontation, the defendant's story is *more credible* if there is evidence that the victim had been an aggressor before, even if the defendant did not know that at the time. However, mere hearsay about such a prior violent act is not probative evidence as to whether the act *actually* occurred, so it does not make the defendant's version of events any more credible and is not admissible under the *Chandler* rule. See *Grano v. State*, 265 Ga. 346, 346 (455 SE2d 582) (1995). As the majority says, citing Justice Weltner's opinion, "the defendant [must] *prove* that the victim committed the prior acts of violence" for those acts to be admitted under *Chandler*. Maj. Op. at 417 (emphasis in original).

However, before discussing the example on which *Chandler* was based, Justice Weltner discussed another example of when evidence

of a victim's violent nature would be relevant to the discovery of the truth of a self-defense claim.

> The town ruffian, in a drunken and enraged state, advances upon a peaceable householder and threatens him with mayhem. The householder shoots him dead, even though no other weapon was in sight, and the erstwhile assailant was several yards distant from the householder. Where the defense is justification under OCGA § 16-3-21, what a defendant "reasonably believes" may be viewed by the factfinder in the light of what the defendant knew as to the decedent's character for violence. Logically, that knowledge is relevant, whether it was obtained by the defendant's painful personal experience at the hands of the decedent; by his observation of violent acts committed by the decedent upon another; *by hearing of other specific acts of violence by decedent that were not committed in his presence*; or by knowledge of the decedent's reputation for violence, unconnected to any specific act.

*Lolley*, 259 Ga. at 608-609 (Weltner, J., concurring specially) (emphasis added).

Thus, aside from evidence relevant to the defendant's *credibility* as to what happened during the confrontation, evidence of the victim's character for violence may be relevant to the defendant's *state of mind* during the confrontation — what the defendant "reasonably believed" about the victim's intentions, to quote the language of the statute. And Justice Weltner gave, as the source of this mindset, not only the defendant's personal knowledge of the victim's prior acts of violence toward himself or others, and general reputation evidence, but also "hearing of other specific acts of violence by decedent that were *not* committed in his presence" — precisely the type of evidence at issue in this case. Id. (emphasis in original). Moreover, in contrast to his argument that the law needed to be changed (as it later was changed in *Chandler*) to allow the admission of evidence of the victim's prior violence against third parties even where that evidence was unknown to the defendant before the confrontation, see id. at 610, Justice Weltner clearly assumed that the law *already* allowed the admission of evidence regarding what the defendant knew about the victim's violent character at the time of the incident — even if that knowledge came from what others had told the defendant. The majority simply ignores this portion of Justice Weltner's opinion, despite citing other parts of his opinion favorably. See Maj. Op. at 417.

Thus, *Chandler* does not address the evidentiary issue presented in this case, and Justice Weltner's *Lolley* special concurrence, upon which *Chandler* was based, suggests that such evidence should be admissible.

2. Also contrary to the majority's view, the evidence at issue is not "hearsay." It is specifically not offered for the truth of the matter asserted (that the victim *actually* committed the prior violent acts at issue), but rather to explain the defendant's *state of mind* (why he used violent force against the victim), even if the information that shaped the defendant's mindset is not accurate.

The Court of Appeals concluded that such evidence has long been deemed admissible as "original" evidence under Georgia law. See *Hodges v. State*, 311 Ga. App. 46, 48 (714 SE2d 717) (2011); OCGA § 24-3-2 ("When, in a legal investigation, information, conversations, . . . and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence."). The majority opinion rejects this conclusion, noting that OCGA § 24-3-2 requires "original evidence" to be "*facts* to explain conduct and ascertain motives." Maj. Op. at 417 (emphasis in original). That is what the statute says, but the "facts" at issue are the details about the information and conversations that explain the defendant's conduct and state of mind, not their truth. Otherwise, OCGA § 24-3-2 would not be an "exception" to the hearsay rule. *Heard v. Lovett*, 273 Ga. 111, 112 (538 SE2d 434) (2000). This principle is even clearer under the classic definition of hearsay codified in Federal Rule of Evidence 801 (c) and adopted in the new Georgia Evidence Code: " 'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted.*" OCGA § 24-8-801 (c) (effective Jan. 1, 2013) (emphasis added).[5]

The majority opinion also notes that this Court has "refused to permit [OCGA § 24-3-2] to give a criminal defendant unbridled license to avoid the bar of hearsay and thereby introduce self-serving statements into evidence." Maj. Op. at 417 (citing *Arp v. State*, 249 Ga. 403, 403-404 (291 SE2d 495) (1982)). But *Arp* does not hold that such statements are hearsay; it instead holds, apparently as a matter of evidentiary policy, that OCGA § 24-3-2 "does not apply" to a defendant's "self-serving" statements offered through third parties.[6] In

---

[5] This provision replaces OCGA § 24-3-2, which is repealed effective January 1, 2013.

[6] The cases cited in *Arp* suggest that the basis for this policy is the well-established rule against a party's offering his own pre-trial admissions into evidence to prove the truth of the matter asserted, as opposed to testifying about them and facing cross-examination, and concern about a defendant's circumventing this limitation by claiming that the statements are offered

this case, however, the defendant was not seeking to avoid cross-examination by offering self-serving statements through other witnesses; Hodges took the stand and wanted to explain what information shaped his state of mind at the time of the confrontation with the victim, subject to full cross-examination on that point. So long as he did not claim that what he had been told about the victim's prior violent acts was *true*, that information would not be hearsay.

3. The majority opinion also contends that in *Hill v. State*, 272 Ga. 805 (537 SE2d 75) (2000), and *Render v. State*, 288 Ga. 420 (704 SE2d 767) (2011), this Court rejected the argument that a defendant may offer evidence of a victim's prior violent acts to show the defendant's state of mind. See Maj. Op. at 415-416. An argument similar to the one Hodges makes was presented in those cases, but it was not directly rejected.

In *Hill*, the trial court refused to allow Hill to testify concerning his victim's prior violent acts against third parties, and he argued on appeal that "his testimony was relevant to his state of mind at the time of the shooting." 272 Ga. at 807. The Court held first that, "[t]o the extent that Hill's complaint is that he should have been permitted to testify to [the victim's] reputation for violence, the testimony was inadmissible since there was no evidence that [the victim] was the aggressor or assaulted Hill." Id. (citing *Woods v. State*, 269 Ga. 60, 63 (495 SE2d 282) (1998)). That holding was correct, because the defense of justification is available only where the victim rather than the defendant was the aggressor, see OCGA § 16-3-21 (b) (3), and if self-defense is not even at issue in the case, then the defendant's knowledge of the victim's violent character would not be relevant to anything. See *Woods*, 269 Ga. at 63. The Court then added, "Hill's hearsay testimony was not competent to establish evidence of [the victim's] prior violent acts or authorized under *Owen v. State*[, 270 Ga. 199 (509 SE2d 905) (1998)], which dealt with the victim's prior acts toward the defendant." *Hill*, 272 Ga. at 807 (footnotes omitted). That holding was also correct, to the extent that Hill's testimony was

---

only to explain his conduct. See *Dickey v. State*, 240 Ga. 634, 641 (242 SE2d 55) (1978). The rule will continue in the new evidence code. See OCGA § 24-8-801 (d) (2) (effective Jan. 1, 2013) (excluding from the hearsay rule only admissions of a party-*opponent*). But the blanket policy against "self-serving" statements, established by our case law, may not survive. See OCGA § 24-4-402 (effective Jan. 1, 2013) ("All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. . . ."); Jack Goger, Daniel's Georgia Handbook on Criminal Evidence § 8:1 (2011 ed.) (noting that the State Bar's comment on § 24-8-801 (c) states, "The proposed new rules would not retain the self-serving statement rule. If a hearsay statement of a party is admissible under a hearsay exception, the fact that it is self-serving should go to weight, not admissibility.").

offered as evidence that the victim actually committed the prior violent acts toward a third party under *Chandler* or toward him under *Owen*.

However, the Court did *not* hold that Hill's testimony about the victim's general reputation for violence would have been inadmissible to corroborate evidence that the victim was the aggressor, had Hill presented such evidence — as Hodges did in this case. Nor did the Court reject the proposition that Hill's testimony regarding what he had heard about the victim's prior violent acts might be admissible, not to show that the acts actually occurred (which would make the testimony hearsay), but simply to show his reasonable belief about the victim's intention (as Justice Weltner had discussed). Thus, *Hill* does not mention *Lolley* or OCGA § 24-3-2. This is how the Court of Appeals' majority understood *Hill*. See *Hodges*, 311 Ga. App. at 50, n. 3 ("The court in *Hill* . . . did not address directly the defendant's 'state of mind argument' . . . .").

The defendant in *Render* did more clearly make the argument that *Chandler* and OCGA § 24-3-2 are different and alternative grounds for admission of evidence of a victim's prior violent acts, as the majority opinion recounts. See Maj. Op. at 416-417. Render, who claimed self-defense, alleged that his trial counsel was professionally deficient in failing to introduce evidence of the victim's prior violent acts as recounted to Render by the victim's friends. See *Render*, 288 Ga. at 422-423. Render claimed that the victim's friends told him that the victim had killed three or four other people and that they were scared that the victim would hurt them if they testified that the victim had killed Render's son. See id. at 423.

In addressing Render's argument, this Court first discussed the cases allowing, but limiting, the admission under OCGA § 24-3-2 of death threats made by the victim against a defendant but not communicated to the defendant before the confrontation. See *Render*, 288 Ga. at 423. But as the Court noted, that was not the type of evidence at issue, and no statutory text or case indicates that OCGA § 24-3-2 is limited only to evidence of prior threats against the defendant. The Court then said that this "is precisely the type of evidence contemplated in and controlled by *Chandler*." *Render*, 288 Ga. at 423. To the extent the Court was saying that, if offered as proof of the *truth* of the prior violent acts, the testimony would be hearsay and thus would not be admissible under *Chandler*, that statement was correct. If, however, the Court meant that *Chandler* governs evidence regarding the defendant's *state of mind*, and not just evidence related to the credibility of his claim that the victim was the aggressor, that would be incorrect, as demonstrated in Division 1 above.

In any event, the Court then explained that Render's counsel had managed to elicit other testimony from Render about his "belief that the victim was dangerous," including evidence about the victim's "bad reputation for violence" and nickname of "OG," or "original gangster." *Render*, 288 Ga. at 423. Unlike this case, Render's argument was raised in the context of ineffective assistance of trial counsel, and in light of the substantial evidence of Render's state of mind that his counsel managed to get before the jury, the Court found no deficient performance and no prejudice to the defense. See id.

I therefore do not think the Court's precedents squarely foreclose Hodges' argument that a story the defendant heard about the victim's prior violent act, without proof of its truth, may be offered to show the defendant's state of mind in support of a self-defense claim.

4. That said, *Hill* and *Render* certainly do not *favor* Hodges' argument. Nor does he cite a single case in which the exclusion of such evidence was held to be error, despite the long history of litigation over self-defense claims in this State.[7] Despite decisions like *Chandler*, there remains a presumption in this State that character evidence is inadmissible, and this presumption is particularly strong as to the character of the victim in a criminal case. This presumption will continue in the new evidence code. See OCGA § 24-4-404 (effective Jan. 1, 2013). Courts of law are, and should be, on guard against "frontier" justice — judgment based not on the evidence and the law but rather on the jury's view of whether the victim "needed killing." *Chandler*, 261 Ga. at 409 (Benham, J., concurring specially). Thus, we have emphasized that "it is just as unlawful to murder a violent person as it is to murder a nonviolent person." *Milton v. State*, 245 Ga. 20, 22 (262 SE2d 789) (1980). And our cases have been chary about allowing defendants to circumvent this presumption. In addition to *Hill* and *Render*, *Arp*'s exclusion of a defendant's "self-serving statements" from the scope of OCGA § 24-3-2 fits this mold. So do two other cases cited by the majority, *Harris v. State*, 279 Ga. 304, 308 (612 SE2d 789) (2005), and *Lewis v. State*, 270 Ga. 891, 893 (515 SE2d 382) (1999), which hold that the defendant's testimony that he previously had been shot by a third party is not admissible to show his state of mind when confronted by the victim. See Maj. Op. at 418.

As discussed above, and as Justice Weltner suggested in *Lolley*, evidence of what the defendant *believed* about the victim's character for violence, including specific violent acts the victim was said to have

---

[7] It should be noted, however, that if such evidence has been admitted before, the decision of the trial court to do so would probably not result in an appellate decision on the issue, given the State's inability to appeal such adverse general evidentiary rulings. See OCGA § 5-7-1 (a); *State v. Lynch*, 286 Ga. 98, 102 (686 SE2d 244) (2009).

committed, without any assertion that his belief was accurate, is not "hearsay" and may be relevant to whether a reasonable person, having heard the same information, would have believed that the victim was about to use deadly force against him. However, in most cases, the probative value of this sort of evidence will be quite limited. For starters, the defense — the defendant and his counsel — cannot suggest that what he was told about the victim is true, because if the truth of the matter is asserted, as opposed simply to a claim about the effect it had on the defendant, the evidence becomes inadmissible hearsay. Indeed, if asked, the defendant must admit that, as far as he knew, what he was told about the victim could be false.

The probative import of this type of evidence is also limited by the other types of victim character evidence that are admissible. Assuming the defendant meets the applicable procedural requirements, including showing prima facie that the victim was the aggressor, he may offer evidence of the victim's prior acts of violence toward him (*Owens*); the victim's prior acts of violence toward third parties, even if the defendant was unaware of them (*Chandler*); the victim's general reputation for violence (*Henderson v. State*, 234 Ga. 827, 828 (218 SE2d 612) (1975)); and, under the new evidence code, an opinion by a qualified witness about the defendant's character for violence.[8] If the defendant offers evidence of one or more of these types, admitted for its truth, then it is unlikely that he will add much with self-serving testimony that someone else, whom he has not brought in to testify, once told him the victim committed a violent act, although he cannot say that what he was told is true and must concede that it may be entirely untrue. In addition, the defense often manages one way or another to get some evidence of this type before the jury, as occurred in *Render*.

On the other side of the evidentiary scale, allowing a defendant to testify about such alleged victim violence poses a serious risk of prejudice. The defendant need not identify who told him about violence the victim inflicted ("I heard it on the street"), and the acts of violence described may be multiple and horrendous, since they are not limited to actual events. While such claims might be of marginal probative value, as just discussed, allowing such evidence would be an invitation to persuasive defendants to fabricate a self-defense

---

[8] See OCGA § 24-4-405 (a) (effective Jan. 1, 2013) (allowing proof of character, where admissible, to be made "by testimony as to reputation or by testimony in the form of an opinion"). Compare *Simpkins v. State*, 149 Ga. App. 763, 765 (256 SE2d 63) (1979) (holding that under existing Georgia law, character may be proved by reputation but not opinion evidence, and criticizing that approach as "an evidentiary anomaly" by which "the law prefers hearsay, rumor, and gossip, to personal knowledge of the witness").

claim, and to defendants with no other substantial defense to do the same. And unless we created a new set of notice and other procedures, see *Chandler*, 261 Ga. at 407-408, the defendant could spring this evidence on the State for the first time at trial.

Furthermore, while the State would be entitled to a jury instruction regarding the limited purpose of admitting such evidence — to show the defendant's state of mind, but not for its truth — if the defendant (or defense counsel in closing argument) suggested later that the violent acts really occurred, which would make them inadmissible hearsay, a jury instruction to disregard the evidence might not be effective, requiring a mistrial. Finally, this sort of evidence is less "reciprocal" than prior difficulties or *Chandler* evidence, which allows a defendant to offer evidence about the victim similar to the evidence the State can offer about the defendant. By contrast, the defense of self-defense puts only the defendant's "reasonable belief" at issue, not the victim's, so while the defendant may seek to poison the jury with tales of the victim's unproven prior violence, similar unproven tales about what the victim had heard about the defendant would not be relevant.

For these reasons, it would be the exceptional case in which evidence of a victim's character for violence, unprovable in any other fashion and not admitted for its actual truth, would be properly admitted, despite the problems inherent in doing so. See OCGA § 24-4-403 (effective Jan. 1, 2013) ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). However, I cannot say that such a case could never arise, and rather than excluding such evidence automatically, I would leave it to the sound discretion of trial courts to decide if the facts and circumstances of a particular case require the admission of such evidence, with fair notice to the prosecution and the court and appropriately strong limiting instructions. I would also leave this door open a crack due to the recognition, also noted by the Court of Appeals, see *Hodges*, 311 Ga. App. at 50, that constitutional due process may require evidentiary rules to be bent in truly exceptional cases to ensure a fundamentally fair trial. See *Chambers v. Mississippi*, 410 U. S. 284, 302-303 (93 SC 1038, 35 LE2d 297) (1973).

5. In this case, the trial court excluded Hodges' proffered evidence about the victim's alleged prior shooting at Hodges' friend and her daughter. However, the jury heard evidence of a prior fistfight between Hodges and the victim; threats the victim was making toward the people, like Hodges, who owed him money and their loved

ones, including Hodges' daughter, on the day of the fatal confrontation; and threatening comments and gestures the victim made toward Hodges while armed with a flail, machete, and another large knife just before the fatal confrontation. Pursuant to *Chandler*, the jury also heard evidence of two other proven violent acts the victim had committed against third parties; the third incident (the alleged shooting) also would have been admitted had Hodges brought either of the alleged victims of it to court to testify. In addition, Hodges was allowed to testify that the victim was "known to carry guns." In light of the ample evidence of the victim's character for violence that was admitted, Hodges' testimony about what he was told by his friend — an event he could not assert actually happened — would have been of limited probative value, and the risk of prejudice was significant. Thus, the trial court would have been entitled to exercise its discretion to exclude the proffered evidence, and even though the court excluded the evidence categorically, any error was harmless.

Accordingly, like the majority but for the different reasons discussed above, I would reverse the judgment of the Court of Appeals and remand the case for consideration of the other enumerations of error that Hodges raised there. See *Hodges*, 311 Ga. App. at 51.

I am authorized to state that Chief Justice Carley and Justice Melton join in this special concurrence.

DECIDED JUNE 18, 2012 —
RECONSIDERATION DENIED JULY 26, 2012.

*Patrick H. Head, District Attorney, Anna G. Cross, Jason R. Samuels, Assistant District Attorneys,* for appellant.
*Lee W. Fitzpatrick,* for appellee.